IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**MICHAEL T. GARRETT,**
       **Plaintiff,**
v.                                                                             Civil Action No. 3:18-CV-206
                                                                               (GROH)

**MR. OKLEY,**
**Warden, USP Hazelton**
       **Defendant.**

**REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

On December 26, 2018, the plaintiff initiated this action by filing a civil rights complaint, pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983, and authorized suits against federal employees in their individual capacities.  ECF Nos. 1, 1-1, 1-2.  Also on December 26, 2018, Plaintiff filed a motion to proceed without prepayment of fees, a consent[1] to collection of fees from trust account, a Prisoner Trust Account Report ("PTAR") and ledger sheets.  ECF Nos. 2, 3, 4, 4-1.  On January 3, 2019, the Court granted Plaintiff's motion to proceed without prepayment of fees, and issued an order to answer.  ECF Nos. 7, 9.  This matter is before the undersigned for an initial review and report and recommendation pursuant to the Local Rules of Prisoner Litigation Procedure ("LR PL P") 2, et seq., and 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A).

---

[1] Although Plaintiff filed his consent, he did not sign the document.  ECF No. 3.

## II.  FACTUAL AND PROCEDURAL HISTORY

In his complaint, Plaintiff names as the sole defendant the then-warden[2] of FCI Hazelton.  ECF No. 1.  Plaintiff alleges that on October 17, 2016, he was injured by a fellow inmate at FCI Hazelton, when that fellow inmate stabbed Plaintiff in the eye with a spork, a combination spoon fork utensil.  ECF No. 1.  Plaintiff asserts the Defendant is responsible for his injury because Defendant failed to maintain a safe environment within the prison.  Id.  As a result of his injuries, Plaintiff seeks seventeen million dollars ($17,000,000.00) in damages.  Id.

Defendant filed a motion to dismiss, or alternatively for summary judgment, and memorandum in support thereof, raising four grounds to support the motion: (1) Plaintiff fails to allege sufficient personal involvement by Defendant to support a Bivens claim; (2) Defendant is entitled to qualified immunity; (3) Plaintiff failed to exhaust administrative remedies before filing suit; and (4) Plaintiff's claims are time barred.  ECF Nos. 28, 29.

Plaintiff filed a response to the motion to dismiss, memorandum in support thereof, and exhibits thereto on April 4, 2019.  ECF Nos. 31, 31-1 through 31-6.  Defendant's reply was filed with the Court on April 10, 2019.  ECF No. 33.  Plaintiff filed another response on July 23, 2019, to which Defendant filed another reply on August 6, 2019.  ECF Nos. 45, 50.

---

[2] Plaintiff named "Joe Oakley" in his complaint, although he later acknowledged the correct spelling of the Defendant warden's name was "Joe Coakley".  ECF No. 31-1 at 4.

## III. LEGAL STANDARD

### A. Pro Se Litigants

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[3] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless." Id.

---

[3] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

**B.     Civil Rights Actions Under <u>Bivens</u>.**

In <u>Bivens</u>, <u>supra</u>, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents. In <u>FDIC v. Meyer</u>, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a <u>Bivens</u> claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." <u>Id.</u> See <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 71 (2001).

**C.     Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 - 1 (1972) (per curiam); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544,

555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light

most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### D. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon

mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.  ANALYSIS

### A.     Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first

7

exhaust all available administrative remedies. 42 U.S.C. § 1997e (a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." Porter v. Nussle, 534 U.S. 516, 524 (2002). "[F]ederal prisoners suing under Bivens [ ], must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." Id. (internal citation omitted). Thus, exhaustion through administrative remedies is clearly mandated by § 1997(e)(a) prior to seeking relief through suit pursuant to Bivens. Booth v. Churner, 532 U.S. 731, 741 (2001).

As recognized in Porter and Booth, exhaustion is a prerequisite to suit, and accordingly, Plaintiff was required to exhaust all available administrative remedies prior to filing his Bivens complaint in federal court. The United States Supreme Court has recognized that the PLRA's exhaustion requirement serves three main purposes: (1) "to eliminate unwarranted federal-court interference with the administration of prisons"; (2) to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 548 U.S. 81, 93 – 94 (2006) (internal citations omitted).

In his complaint Plaintiff asserts that he has completed the prisoner grievance procedure. ECF No. 1 at 5. However, a review of various attachments to other pleadings related to the grievance process proceedings demonstrate that Plaintiff has not exhausted the grievance procedure for the claims advanced herein against the warden.

Plaintiff and Defendant have both filed with the Court copies of some of Plaintiff's administrative remedy appeals. Defendant notes that Plaintiff has filed 186 administrative

remedy appeals during his designation to the Bureau of Prisons.  ECF No. 29 at 3.   A review of the "Administrative Remedy Generalized Retrieval Sanitized Format" document filed by Defendant shows that four entries list "Request Compensation for Damage/Loss of Vision 2 Eye", all with the remedy number 889594.  ECF No. 29-1 at 16.   Those four requests were dated January 24, 2017, February 8, 2017, March 16, 2017, and May 4, 2017.  Id.

The January 24, 2017, request was stamped by the Warden's Office at USP McCreary as received on that date, and was also stamped as received by the Warden's Office on January 27, 2017.  ECF No. 29-1 at 16, 23.   That administrative remedy request, assigned number 889594-F2, alleged:

> I was in the SHU at USP Hazelton/Oklahoma holdover 12-2016 to 1-5-2017, and could not get institutional staff/MIC to give me the Administrative Remedy forms that I needed to file this grievance until now… In October of 2016 I was hit in my right eye with a spork (spoon/fork) by another inmate in the dining hall at USP Hazelton… I was taken to the UWV-Eye Center, where two major operations were performed to try and repair my eye, and to restore my vision. . . Repairs to my eye were made, but I am now permanently "Blind" in my right eye. . . "I am seeking monetary compensation for the loss of my vision in that eye at the sun Seventy Seven Million, Seven hundred Seventy Seven thousand, Seven thousand, seven hundred dollars… "Attorney assistance in this matter are forthcoming."

ECF No. 29-1 at 23.   The defendant Warden was not mentioned in the request for administrative remedy.  Id.

The February 8, 2017, response was "for informational purposes only", and stated that Plaintiff was evaluated by a physician on January 9, 2017.  Further, the response disclosed that Plaintiff had no complaints about his eye at that time, and that there was "no documentation to prove a delay in [his] medical care and the injury to [his] eye did

9

[resulted] from staff negligence or delay of care." ECF No. 29-1 at 22. Plaintiff was further advised that he could appeal to the Regional Director, Mid-Atlantic Regional Office if he disagreed with the response. Id.

Plaintiff signed a Regional Administrative Remedy Appeal on February 9, 2017. ECF No. 29-1 at 21, 24. That Regional Administrative Remedy Appeal alleged:

> It seems that Warden J. Ray Ormond[4] misunderstood what the issue of any complaint actually is about. . . My grievance is not about the surgery, is not about the medical care or the medication that I [received]! "This grievance is about the "Permanent Loss of My Eyesight" in my right eye. . . "And since I am a word of the Attorney General, remanded to custody of the Federal Bureau of Prisons; anything, that adversely happens to me is the responsibility/Liability of the Bureau, and its agents, and institutions."  I am seeking monetary compensation for the  loss of vision in my right eye at the amount of Seventy Seven Million, Seven hundred Seventy Seven thousand, Seven thousand, seven hundred dollars. . . "Attorney assistance on this issue will be forth coming."

ECF No. 29-1 at 24. Although Plaintiff mentioned the potential liability of a warden, the named defendant Warden in this matter was not mentioned in this request for administrative remedy. Id.

On March 2, 2017, that Regional Administrative Remedy Appeal was stamped as received by the Bureau of Prisons Mid Atlantic Regional Office Regional Counsel. Id. The Mid-Atlantic Regional Director finalized his denial of that claim on March 16, 2017. ECF No. 29-1 at 19. The denial advised Plaintiff that he could appeal to the Bureau of Prisons General Counsel. Id. Plaintiff was further advised that "[t]o seek monetary compensation for the alleged incident, [he] may file a formal Tort Claim request with the

---

[4] Mr. Ormond is currently the Regional Director of the Northeast Region of the Federal Bureau of Prisons. https://www.bop.gov/about/agency/bio_ner.jsp  According to the BOP website, Mr. Ormond has previously been employed at FCI Butner, FCI Beckley, FCI Cumberland, USP McCreary, FDC Honolulu, and FCC Petersburg, but he has never been assigned to Hazelton.

Mid-Atlantic Regional Counsel." Id.

Plaintiff prepared a Central Office Administrative Remedy Appeal on March 25, 2017, which was stamped as received on April 5, 2017, by the Administrative Remedy Section of the Bureau of Prisons. ECF No. 21-2 at 4. Plaintiff alleged:

> I was rendered "Blind" in my right eye, by an irate inmate who was taking "Psychotropic" medication for what must be extreme "Paranoia" of some kind to punch me in my eye, blinding me in that eye for the rest of my life! . . The Federal Bureau of Prison[s] should have known that this particular inmate could not function in a "non violent" way being housed with other general population inmates, and therefor, was "negligent in failing to house that inmate properly based on his "Extr[eme] Paranoia! . . Moreover, my permanent "Blindness in my right eye is not a "Tort Claim" issue; the Bureau of Prisons, will only claim "Sovereign Immunity" under the (FTCA), and refuse me monetary compensation in the sum of Seventy Seven Million, Seven hundred Seventy Seven thousand, Seventy thousand, Seven hundred dollars I seek for my loss of sight. . . "Attorney assistance is forth coming on this issue."

ECF No. 31-2 at 4. Again, the named defendant Warden was not mentioned in this request for administrative remedy. Id. This Central Office Administrative Remedy Appeal received on April 5, 2017, was disposed[5] of on May 4, 2017. Id.

It appears that even if Plaintiff exhausted remedy 899594, he did not seek an administrative remedy for damages allegedly caused by the defendant herein. Accordingly, he did not exhaust his administrative remedies for the damages alleged in the instant complaint.

In Jones v. Bock, 549 U.S. 199, 216 (2007), the United States Supreme Court

---

[5] Neither party submitted any documents generated by the National Inmate Appeals office regarding the instant administrative remedy, number 899594. The only document submitted by either party that was produced by the National Inmate Appeals office, was filed by Plaintiff and regards a completely separate administrative remedy, number 902255, wherein Plaintiff alleged he was assaulted by staff and sought $1,700.00 in compensation. ECF No. 31-2 at 10.

concluded that "failure to exhaust is an affirmative defense under the PLRA." Although the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," the Court held "that Congress has provided in 1997e(a) that an inmate must exhaust [his claims] irrespective of the forms of relief sought and offered through administrative avenues." Booth, 532 U.S. at 741, n.6. Several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x. 295, 296 (5th Cir. 2003) ("If the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner.") Consistent with other Circuits, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citing Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)).

Here, Plaintiff does not allege that he was prevented through no fault of his own from availing himself of available remedies, nor does he allege that institutional

authorities refused to provide him the forms which were necessary to complete administrative exhaustion. Rather, Plaintiff claims he exhausted his claims against the named defendant warden. However, a review of the documents submitted to the Court refutes this assertion. The only documents submitted by Plaintiff regarding exhaustion of a claim through the National Inmate Appeals office relates to a completely separate administrative remedy request, number 902255, not administrative remedy request number 889594. Moreover, administrative remedy request number 889594 does not make any allegations against the named defendant Warden. Accordingly, Plaintiff has failed to demonstrate that he has exhausted his administrative remedy request regarding any alleged wrongdoing by the named defendant Warden. Further, Plaintiff has failed to demonstrate that he was prevented, through no fault of his own, from exhausting available administrative remedies as relates to the alleged wrongdoing by the named defendant Warden.

Accordingly, the undersigned finds that Plaintiff has presented no claim that is substantial and serious enough that would deter a similarly situated prisoner of ordinary fitness from pursuing available administrative remedies, and that Plaintiff failed to exhaust the available administrative remedies prior to instituting this action. Accordingly, that this Court is without jurisdiction.

In <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 94 - 95 (1998), the Supreme Court wrote that "without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." <u>See also</u> <u>Reinbold v. Evers</u>, 187 F.3d 348, 359 n. 10 (4th Cir. 1999). Because this court

lacks jurisdiction, this court cannot entertain the petition.

Defendant further asserted that Defendant is entitled to qualified immunity, that Plaintiff does not allege sufficient personal involvement by the Defendant to establish Bivens liability, and that Plaintiff's claims are barred by the statute of limitations, as affirmative defenses to Plaintiff's claims. Although some or all of those assertions may justify dismissal of this action, the Court need not address any of those claims as it is clear that Plaintiff has failed to exhaust his administrative remedies and in this action.

Accordingly, even if the Plaintiff might have a civil rights cause of action, it is apparent that the statute of limitations for bringing this <u>Bivens</u> claim expired before he filed this action. Therefore, the complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief can be granted.

It is further **RECOMMENDED** that Defendant's motion to dismiss, or alternatively, for summary judgment [ECF No. 28] should be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages,

including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:   November 12, 2019

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE